UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA WALTER KRAUS LYONS,

       Plaintiff,    21-cv-3661 (JGK)

  - against -      MEMORANDUM OPINION
             AND ORDER
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, ET AL.,

       Defendants.

JOHN G. KOELTL, District Judge:

The plaintiff, Joshua Walter Kraus Lyons, brought this action against the defendants, United States Citizenship and Immigration Services ("USCIS") and several USCIS and Department of Homeland Security ("DHS") officials (collectively, "USCIS"), alleging that USCIS has unreasonably delayed the adjudication of his Form I-526 Immigrant Petition by Alien Investor ("I-526 petition") in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b).[1] The plaintiff seeks an order under the APA and a writ of mandamus compelling USCIS to process his I-526 petition within 30 days, as well as declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

---

[1] The plaintiff's complaint named the following federal officials as defendants: Alejandro Mayorkas, sued in his official capacity as the Secretary of DHS; Tracy Renaud, sued in her official capacity as the Director of USCIS; and Sarah Kendall, sued in her official capacity as Chief of the USCIS Immigrant Investor Program Office. Ur M. Jaddou, the current Director of USCIS, is automatically substituted for former Director Tracy Renaud pursuant to Federal Rule of Civil Procedure 25(d).

USCIS moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion to dismiss is **granted** in part and **denied** in part.

I.

Unless otherwise noted, the following facts are taken from the plaintiff's complaint and are accepted as true for purposes of the motion to dismiss.

The Immigration and Nationality Act, 8 U.S.C. §§ 1101 et seq., authorizes the issuance of certain visas, known as "EB-5" visas, to noncitizens who have "invested . . . capital" in a "new commercial enterprise" ("NCE") that will "creat[e] full-time employment" for at least ten United States citizens or noncitizens with work authorization. 8 U.S.C. § 1153(b)(5)(A); Compl., ECF No. 1, ¶ 13. During the period relevant here, applicants for an EB-5 visa were required to invest $1,000,000 into a qualifying enterprise unless the enterprise was located in a "targeted employment area," in which case, the investment threshold was $500,000. Compl. ¶ 13. A targeted employment area is a "rural area" or an area with unemployment exceeding 150% of

the national average rate. 8 U.S.C. § 1153(b)(5)(D)(viii);
8 C.F.R. § 204.6(e).[2]

Under what is known as the "Immigrant Investor Pilot
Program" or "Regional Center Program," USCIS is authorized to
designate certain economic entities as "regional centers" in
which noncitizens can invest through an NCE. Compl. ¶ 14; see
8 C.F.R. §§ 204.6(j)(4)(iii), (m). Applicants who invest in a
USCIS-designated regional center can satisfy the "employment
creation requirement" for an EB-5 visa "by [submitting] evidence
that the investment will create" at least ten jobs "indirectly."
8 C.F.R. § 204.6(j)(4)(iii). Moreover, such applicants may use
any one of various "reasonable methodologies" to demonstrate
that their investment will "result in increased employment." Id.
§ 204.6(m)(7)(ii); see also id. § 204.6(j)(4)(iii); Compl. ¶ 14.
Otherwise, applicants remain subject to the usual eligibility
requirements for an EB-5 visa. See 8 C.F.R. § 204.6(m)(1).

To obtain an EB-5 visa, an applicant must file a Form I-526
with USCIS. See 8 C.F.R. § 204.6(a); Compl. ¶ 15. The filing of
the Form I-526 is just the first of several steps in the process
of securing an EB-5 visa, and eventually, unconditional status
as a lawful permanent resident ("LPR"). See Compl. ¶ 15.

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits
all alterations, omissions, emphasis, quotation marks, and
citations in quoted text.

The plaintiff is a citizen of Canada currently residing in New York City. Compl. ¶ 19. The plaintiff has invested $530,000 in a limited partnership called CanAm Florida Regional Center, LP II ("CanAm LP"), which is an NCE serving as the investment vehicle for a project "to develop and manage" a "mixed-use" building complex near the MiamiCentral Station in Miami, Florida (the "Project"). Compl. ¶¶ 17, 20. The Project is sponsored by CanAm Florida Regional Center, LLC, a USCIS-designated regional center. See Compl. ¶¶ 16-17. Over 260 foreign investors, many or all of whom are seeking to obtain EB-5 visas, have invested in the Project through CanAm LP. Id. ¶ 17. The Project is expected to result in the creation of at least 13 jobs per individual investor, including the plaintiff. See id. ¶ 18.

The plaintiff filed an I-526 petition, claiming eligibility for an EB-5 visa based on his investment in the Project. Compl. ¶ 21. The plaintiff also paid a filing fee of $3,675. Id. USCIS received the plaintiff's petition on October 3, 2019. Id. Four days later, USCIS issued a "Notice of Action" to the plaintiff, which acknowledged that October 3, 2019 was the plaintiff's "priority date." Id.

On January 29, 2020, while the plaintiff's I-526 petition was pending, USCIS announced that it would adopt a new process for adjudicating I-526 petitions. See id. ¶ 41. Historically, USCIS had adjudicated I-526 petitions on a "first-in, first-out

4

basis." Id. But USCIS stated that on March 31, 2020, it would
begin processing I-526 petitions using the "visa availability
approach," which would "allow[] qualified EB-5 petitioners from
traditionally underrepresented countries to have their petitions
approved in a more timely fashion." Id.

The plaintiff commenced this action on April 26, 2021,
roughly 18 months after he submitted his I-526 petition to USCIS.
As of that date, "no action ha[d] been taken" with respect to the
plaintiff's I-526 petition. Id. ¶ 22. The plaintiff "has made
multiple inquiries with . . . USCIS about the status of [the]
petition, but has received only form responses from USCIS, with
no meaningful or case-specific information." Id. ¶ 23. "USCIS
has offered no reason for the delay, [and] has not indicated a
time frame in which a response can be expected." Id. ¶ 51.

The plaintiff, who obtained both his undergraduate and
graduate degrees from American universities, alleges that he
"needs a decision on his I-526 petition so that he can decide
whether to pursue career plans in the [United States]." Compl.
¶ 19. He claims that he "faces ongoing uncertainty" about his
immigration status, "which [has] hinder[ed] his ability to make
career, family, and life choices, and [has] deprive[d] him of
the peace of mind of knowing where his future will be." Id. at
¶ 52(b); see also id. ¶¶ 27-28. Moreover, the plaintiff alleges
that "[t]he longer it takes for [his] I-526 petition to be

processed, the longer his money is at risk, and the greater the
risk that the [P]roject will not have [the] available funds" to
refund his investment "if his I-526 petition is denied." Id.
¶ 26; see also id. at ¶ 25 (explaining that the "terms of the
[CanAm LP] offering documents" provide for a refund in the event
of a failed I-526 petition).

The plaintiff also alleges that processing times for I-526
petitions have increased dramatically overall. Specifically, the
plaintiff alleges that the "median processing time" for an I-526
petition in 2020 was 31.2 months, a "substantial increase" from
a median processing time of 19 months in 2019, 17.9 months in
2018, and 16.6 months in 2017. Id. ¶ 31. Over the very same
time period, "the number of I-526 petitions received by USCIS
steadily declined." Id. ¶ 32. Moreover, "[s]ince at least 2012,
USCIS has stated publicly and regularly at stakeholder meetings
and calls that its goal for adjudications [of I-526 petitions]
is 6 months or less." Id. ¶ 33.

The plaintiff alleges that USCIS has unreasonably delayed
the adjudication of his I-526 petition, in violation of the APA,
5 U.S.C. § 555(b). See Compl. ¶¶ 59, 62. The plaintiff seeks an
order under the APA and a writ of mandamus compelling USCIS to
process his I-526 petition within 30 days, see 5 U.S.C. § 706(1);
28 U.S.C. § 1361, as well as declaratory relief pursuant to the
Declaratory Judgment Act, 28 U.S.C. § 2201. On July 1, 2022,

USCIS filed its motion to dismiss, which confirmed that the plaintiff's I-526 petition was still pending. See USCIS Memo. of Law ("USCIS Motion"), ECF No. 29, at 2. To date, the plaintiff's I-526 petition has not been processed. See Jan. 10, 2023 USCIS Letter, ECF No. 43.

## II.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept

7

as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss, the Court may consider documents attached to or referenced in the complaint, documents that the plaintiff either possessed or knew about and relied on in bringing the lawsuit, or matters of which judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). In particular, courts may take judicial notice of "government websites . . . or other relevant matters of public record." Office Sol. Grp., LLC v. Nat'l Fire Ins. Co., 544 F. Supp. 3d 405, 412 (S.D.N.Y. 2021). However, "[i]f [a] court takes judicial notice" of such records, "it does so in order to determine what statements they contained, but . . . not for the truth of the matters asserted." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

### III.

The APA requires agencies to "proceed to conclude a matter presented to [them]" in a "reasonable time," 5 U.S.C. § 555(b), and it empowers the courts to "compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1). The parties here agree that courts assess the reasonableness of an agency's time frame for an adjudication, like the adjudication of the I-526 petition at issue here, using the six factors set forth in

8

Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"). See Nat'l Res. Def. Council v. FDA, 710 F.3d 71, 84 (2d Cir. 2013) (TRAC "set[s] forth [the] test for determining if agency action is unreasonably delayed").

The six TRAC factors include the following: (1) the time the agency takes to act, which must be governed by a "rule of reason"; (2) whether "Congress has provided a timetable" for the adjudication at issue; (3) whether "human health and welfare are at stake," making agency delays "less tolerable"; (4) the effect of expediting delayed agency action "on agency activities of a higher or competing priority"; (5) the "nature and extent of the interests prejudiced by the delay"; and (6) whether agency "impropriety" has contributed to the delay. TRAC, 750 F.2d at 80; see also Saharia v. USCIS, No. 21-cv-3688, 2022 WL 3141958, at *3 (S.D.N.Y. Aug. 5, 2022) (collecting cases applying the TRAC factors to I-526 petitions). The application of the TRAC factors to a "claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003). And "because the TRAC analysis is a fact-intensive test, it is usually inappropriate to resolve [an unreasonable-delay claim] on a motion under Rule 12(b)(6)." Saharia, 2022 WL 3141958, at *4.

In this case, USCIS argues that the plaintiff's claim of unreasonable delay must be dismissed because the six TRAC factors weigh decisively in the agency's favor. The plaintiff disagrees. For the reasons below, the TRAC factors counsel against dismissal at this stage, and USCIS's motion to dismiss with respect to the APA unreasonable-delay claim is **denied.**

**A.**

The first of the six TRAC factors is "the most important" in evaluating a claim of unreasonable agency delay. In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008). "Indeed, only the first TRAC factor is phrased as a categorical command: the time agencies take to make decisions must be governed by a rule of reason." Liu v. Mayorkas, No. 20-cv-654, 2021 WL 2115209, at *3 (D.D.C. May 25, 2021) (emphasis in original). This factor "requires an inquiry into whether there is any rhyme or reason for the Government's delay" -- that is, "whether the agency's response time . . . is governed by an identifiable rationale." Saharia, 2022 WL 3141958, at *4.

USCIS argues that the "visa availability approach" to the adjudication of I-526 petitions, which was implemented in early 2020, readily satisfies this "rule of reason" requirement. USCIS explains that under this approach, the agency "give[s] priority to petitions where visas are immediately available, or soon [to be] available." USCIS Motion at 6. The availability of a visa is

determined "by comparing the petitioner's country of birth . . .
with the Department of State's Monthly Visa Bulletin indicating
the availability of visas by country." Id. at 6-7. Once a visa
is "available or soon to be available," USCIS will "generally
manage[]" the processing of I-526 petitions in "first in, first
out" order. Id. at 13. According to USCIS, this process "allows
qualified EB-5 petitioners from traditionally underrepresented
countries to have their petitions approved in a more timely
fashion," id. at 14, because those petitioners no longer need to
wait behind applicants "from countries that are oversubscribed,"
id. at 8 (explaining that a country is "oversubscribed" when "a
country's visa demand exceeds the supply of visa numbers
available for allocation in a given classification").

   In this case, it would be premature for the Court to
conclude, on a Rule 12(b)(6) motion to dismiss, that USCIS's
processing times for I-526 petitions are actually governed by a
rule of reason. The plaintiff has plausibly alleged otherwise.
The plaintiff filed his I-526 petition roughly 33 months before
USCIS moved to dismiss, and he has awaited an adjudication of
that petition for 39 months (or over three years) to date. If,
as USCIS urges, this Court excludes the eight-month lapse in
statutory authorization for the Regional Center Program, see
USCIS Motion at 14 & n.10, then the I-526 petition has been

pending for 31 months -- that is, 2.5 years.[3] The plaintiff points out, and USCIS does not dispute, that his "country of birth, Canada, is not an oversubscribed country . . . , nor has it been an oversubscribed country in any of the monthly visa bulletins issued by the U.S. Department of State since [the] [p]laintiff submitted his I-526 petition in October 2019." Pl.'s Opp'n, ECF No. 30, at 7. This fact would presumably help to move the plaintiff closer to the front of the line under USCIS's visa availability approach, which was allegedly adopted to ensure timelier EB-5 approvals for applicants from "underrepresented countries." Compl. ¶ 41. However, the plaintiff has not received any "indicat[ion] of the time frame in which a response [to his I-526 petition] can be expected," Compl. ¶ 51, and he alleges that the visa availability approach "purportedly [implemented] on March 31, 2020, did not significantly reduce I-526 processing times," id. ¶ 42.

Other allegations in the complaint suggest that USCIS's delays in adjudicating I-526 petitions might not be governed by a rule of reason. The plaintiff plausibly alleges that I-526

---

[3] The statutory authorization for USCIS's maintenance of the Regional Center Program expired on June 30, 2021, see Bromfman v. USCIS, No. 21-cv-571, 2021 WL 5014436, at *2 (D.D.C. Oct. 28, 2021), and Congress's reauthorization of the Program took effect on March 15, 2022, see Consolidated Appropriations Act of 2022, § 103(b), 136 Stat. 49, 1075 (codified as amended at 8 U.S.C. § 1153(b)(5)).

processing times have increased substantially while the number of I-526 petitions filed per year has declined, and that during the same period, USCIS has stated "regularly . . . that its goal for [I-526] adjudications [is] 6 months or less." Compl. ¶¶ 31-33. USCIS provides no explanation for these alleged increases in processing times, which lend support to the contention that such processing times are not reasonable.[4] See Liu, 2021 WL 2115209, at *4 (finding that "specific allegations of a significant, measurable, and unexplained drop-off in processing rates" for Forms I-526 supported an inference that "no rule of reason governs USCIS's processing times"). Furthermore, the plaintiff alleges that the $3,675 filing fee for I-526 petitions is the "third most expensive filing fee [required] for a single petition," and that USCIS may be using these fees to "pay for other, non-EB-5 adjudications instead of using [the] fees to process EB-5 applications and petitions in a timely fashion."

---

[4] USCIS does assert that the increase in I-526 processing times between "fiscal year 2020 and fiscal year 2022" occurred due to the "lapse in statutory authorization" for the Regional Center Program and the corresponding "interruption in [the] processing of Regional Center Program I-526 petitions." USCIS Motion at 19. Setting aside the fact that the Court cannot assess the validity of that proposition without a developed evidentiary record, this assertion does not explain the dramatic increase in processing times that occurred between 2017 and the filing of the complaint in April 2021, a few months before the sunset of the Regional Center Program. That is the time period for which the complaint provides alleged facts about an unexplained increase in processing times. See Compl. ¶¶ 31-32.

Compl. ¶¶ 39, 37. At the very least, the plaintiff's allegations
raise factual questions as to whether USCIS's processing times
for I-526 petitions are reasonable, and those questions are not
susceptible to resolution on a Rule 12(b)(6) motion to dismiss.

USCIS contends that "factors" besides an applicant's home
country, including "whether the underlying project [in which the
applicant invested] has been reviewed," are also considered "as
part of USCIS's multi-layered visa eligibility approach." USCIS
Reply, ECF No. 31, at 3. But without a factual record to support
this vague proposition, the Court cannot identify the precise
contours of USCIS's "multi-layered" method for adjudicating I-
526 petitions, much less conclude that this method results in
processing times that satisfy a rule of reason. Indeed, it would
be inappropriate at this stage for the Court to assume the truth
of USCIS's factual representations about its purported rule of
reason, because USCIS relies primarily on its public statements,
press releases, and websites to describe its visa availability
approach. While these "government materials may be judicially
noticed and considered on a motion to dismiss," "judicial notice
cannot be used to circumvent the rule against hearsay," and the
"facts asserted" in "official statements [and] on USCIS's
website . . . are not automatically admissible for their truth
here." Liu, 2021 WL 2115209, at *4. Because the Court must
accept as true the complaint's factual allegations, "the Court

14

cannot assume that the USCIS materials cited by [USCIS] accurately describe all the factors that determine the processing times for I-526 petitions." Id.

To support its position that the first TRAC factor favors dismissal, USCIS points to several decisions in which courts concluded that the visa availability approach is "governed by a rule of reason." USCIS Motion at 14; see, e.g., Palakuru v. Renaud, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (granting motion to dismiss an unreasonable-delay claim related to I-526 petition); Mokkapati v. Mayorkas, No. 21-cv-1195, 2022 WL 2817840, at *7 (D.D.C. July 19, 2022) (similar); Thakker v. Renaud, No. 20-cv-1133, 2021 WL 1092269, at *8 (D.D.C. Mar. 22, 2021) (similar). However, the "[r]esolution of a claim of unreasonable delay" requires careful attention to "the particular facts and circumstances" of each case, Mashpee, 336 F.3d at 1100, and the specific allegations here reveal factual disputes that cannot be resolved without an evidentiary record. Other courts have similarly concluded, at the pleadings stage, that questions of fact foreclosed any determination as to whether I-526 processing times under the visa availability approach satisfied a rule of reason. See, e.g., Liu, 2021 WL 2115209, at *5; Addala v. Renaud, No. 20-cv-2460, 2021 WL 244951, at *3 (D.D.C. Jan. 25, 2021); Nadhar v. Renaud, No. 21-cv-00275, 2022 WL 684338, at *4 (D. Ariz. Mar. 8, 2022) ("The first TRAC factor . . . exposes

the questions of fact that remain live in this matter, which favor denying the motion to dismiss."); Velagapudi v. USCIS, No. 22-CV-295, 2022 WL 4447409, at *7 (E.D. Mo. Sept. 23, 2022); Gutta v. Renaud, No. 20-cv-06579, 2021 WL 533757, at *8 (N.D. Cal. Feb. 12, 2021).

USCIS also argues that courts "routinely" decline to find unreasonable delay in cases involving "wait times for immigration benefits" that are "similar [to] or longer [than]" the delay at issue in this action. USCIS Motion at 15 (collecting decisions holding that immigration-related delays of three to five years were not unreasonable). However, the reasonableness of a delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful." Mashpee, 336 F.3d at 1102. And "adopting a bright-line rule for [the] reasonableness" of an immigration-related delay "would undermine the fact-specific nature of the TRAC inquiry." Gutta, 2021 WL 533757, at *7. Indeed, while some courts have upheld immigration-related delays of three or more years, others have denied Rule 12(b)(6) motions to dismiss where plaintiffs with pending I-526 petitions endured delays shorter than the one at issue here. See, e.g., Keller Wurtz v. USCIS, No. 20-cv-2163, 2020 WL 4673949, at *4 (N.D. Cal. Aug. 12, 2020) (concluding, based on all of the alleged circumstances, that a plaintiff who had been waiting "around two years" for an I-526

adjudication stated an unreasonable-delay claim); Liu, 2021 WL
2115209, at *5 (same); Lammers v. Chief, Immigrant Inv. Program,
No. 21-cv-668, 2021 WL 9408916, at *1, *3 (M.D. Fla. July 28,
2021) (same). In this case, the first TRAC factor weighs in
favor of the plaintiff not merely because he has been waiting
for more than 2.5 years, but because the complaint permits a
plausible inference that this delay is not attributable to a
rule of reason.

Finally, USCIS contends that the delay here cannot be
"unreasonable" because "the time it has taken to adjudicate [the
plaintiff's] Form I-526 is still within normal processing time,"
which "is currently 48.5 months" for "all petitioners aside from
mainland-born Chinese petitioners." USCIS Motion at 17-18. But
this argument rests on the fallacy that USCIS's "normal"
processing time is necessarily a "reasonable" processing time.
See Keller Wurtz, 2020 WL 4673949, at *4 ("The median processing
time for all applications sheds little light on a reasonable
time to process an application prioritized under USCIS's new
system . . . ."); Gutta, 2021 WL 533757, at *8 (USCIS's argument
that "the wait times at issue . . . are on the lower end of
[its] most recent estimated [I-526] processing times . . . begs
the question by assuming that USCIS's average processing time is
itself reasonable"). And USCIS's comparison to its own posted
processing time is particularly unpersuasive in light of the

17

plaintiff's allegations that the delays in I-526 adjudications have substantially and inexplicably increased while the annual filing rate for I-526 petitions has declined. See Keller Wurtz, 2020 WL 4673949, at *4 ("The fact that USCIS takes . . . longer to adjudicate other [I-526] petitions does not in itself show that such delay is reasonable, particularly where USCIS's rate of review appears to have stalled significantly[.]").

In sum, the plaintiff's allegations raise various factual questions as to whether the delay in the adjudication of his I-526 petition is reasonable, and any attempt to resolve those questions at the pleadings stage would be premature. The Court will be better positioned to determine whether I-526 processing times are governed by a rule of reason once a full evidentiary record has been developed. But for now, the first TRAC factor favors the plaintiff and weighs strongly against dismissal.

**B.**

The second TRAC factor concerns "whether Congress has indicated the time frame [in] which it expects the agency to act." Saharia, 2022 WL 3141958, at *5 (citing TRAC, 750 F.2d at 80). Congress has expressly provided that "[i]t is the sense of Congress that the processing of an immigrant benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Furthermore, when Congress reauthorized the Regional Center Program earlier

18

this year, it directed USCIS to set fees to cover "the cost of completing adjudications, on average, not later than . . . 240 days after receiving a petition" based on the Regional Center Program. Consolidated Appropriations Act of 2022, Pub. L. 117-103, § 106(b)(4), 136 Stat. 49, 1104 (citing to the Regional Center Program provision, 8 U.S.C. § 1153(b)(5)).

USCIS contends that the second TRAC factor cannot favor the plaintiff because these timeframes for adjudication are neither "mandatory" nor "enforceable." USCIS Motion at 21. It is true that Congress has not mandated a deadline for the processing of I-526 petitions, but Congress's nonbinding language is "certainly an indication of the speed with which it expects the agency to proceed." Saharia, 2022 WL 3141958, at *6. In this case, the plaintiff's wait time far exceeds the 180-day (or six-month) timeframe and even the 240-day (or 20-month) timeframe set forth in the statutes discussed above. Thus, the second TRAC factor weighs against dismissal. See, e.g., Liu, 2021 WL 2115209, at *5 (second TRAC factor favored plaintiff where delay in processing I-526 petition was longer than Congress's nonbinding 180-day timeline); Lammers, 2021 WL 9408916, at *2 (same); Keller Wurtz, 2022 WL 4673949, at *5 (same).

## C.

At this stage of the proceedings, the remaining TRAC factors are either neutral or slightly favorable to the plaintiff.

19

**1.**

The fourth TRAC factor requires the Court to assess the impact that expediting the delayed agency action would have on competing agency priorities. See TRAC, 750 F.2d at 80. USCIS argues that this factor "weighs heavily" in its favor because granting the requested relief "would serve to improperly advance [the] [p]laintiff's petition ahead of other petitions" filed by similarly situated noncitizens, and would give the plaintiff priority over others who cannot "file their own lawsuits." USCIS Motion at 24-25. The plaintiff argues that his requested relief would not result in "unwarranted line-skipping," and that USCIS's position, if taken to its logical conclusion, would prevent any applicant from seeking judicial recourse for an unreasonable USCIS delay. Pl.'s Opp'n at 16-17.

The Court appreciates that allowing the plaintiff's claim to proceed comes with the risk of moving the plaintiff ahead of other applicants who have similarly waited for long periods of time to have their I-526 petitions adjudicated. And USCIS is correct that some courts, citing to that risk, have concluded that the fourth TRAC factor weighs in the government's favor. See, e.g., Thakker, 2021 WL 1092269, at *7; Palakuru, 521 F. Supp. 3d at 53. But in this case, the fourth TRAC factor is neutral for two reasons.

20

First, "it is not apparent from the face of . . . the
complaint, or from any material[s] for which USCIS has requested
judicial notice," that a resolution of the unreasonable-delay
claim in the plaintiff's favor would in fact permit the plaintiff
to jump the line at the expense of others. Keller Wurtz, 2020 WL
4673949, at *5. At the pleadings stage, the Court cannot accept
USCIS's representations to that effect as true. USCIS will have
an opportunity to prove that the fourth TRAC factor cuts in its
favor later in this litigation, but the Court currently lacks "an
evidentiary record showing that granting [the requested] relief
would serve only to delay other applications equally deserving
of consideration." Id.

Second, the ultimate relief to be awarded in this case
cannot be determined at the pleadings stage. As the plaintiff
explains, his complaint contains allegations suggesting that
"the line of I-526 petitioners as a whole is moving unreasonably
slowly." Pl.'s Opp'n at 16; see, e.g., Compl. ¶¶ 29, 31-33, 36-
39, 41-42. And if such a contention were proven true, then a
court could "potentially provide relief by compelling USCIS to
increase its processing rate, thus producing net gain for I-526
petitioners as a group." Liu, 2021 WL 2115209, at *5. Because
the Court cannot determine the form of relief, if any, that
might prove appropriate at the conclusion of the action, and
because the Court lacks a factual record to evaluate USCIS's

line-skipping concerns, the fourth TRAC factor is neutral at
this stage.

**2.**

The third and fifth TRAC factors, which are "often
considered together," "require the Court to examine the nature
and extent of the interests prejudiced by delayed agency
adjudication." Saharia, 2022 WL 3141958, at *6 (collecting
cases). Here, the plaintiff alleges that the delay in the
adjudication of his I-526 petition has resulted in "ongoing
uncertainty" regarding his immigration status, which in turn
"deprives him of [his] peace of mind" and "hinders his ability
to make career, family, and life choices." Compl. ¶ 52(b); see
also id. ¶ 29 (alleging that the plaintiff cannot "decide
whether to pursue career plans in the U.S."). The plaintiff is
also concerned that the delay has jeopardized his ability to
obtain a refund of his $530,000 investment in the event his I-526
petition is denied. See id. ¶¶ 25-26. USCIS argues that these
"alleged harms" are "vague," "unclear," and "inherent in the
adjudication process[,] and thus do not tip the TRAC factors in
[the] [p]laintiff's favor." USCIS Motion at 22.

The parties cite various decisions in support of their
respective positions on the third and fifth TRAC factors, but
those decisions simply underscore the case-specific nature of
the inquiry. For example, some courts have determined that a

plaintiff's alleged interests in planning for the future or
supervising an investment were not sufficient to tilt the third
and fifth TRAC factors in the plaintiff's favor. See Thakker,
2021 WL 1092269, at *8; Desai v. USCIS, No. 20-cv-1005, 2021 WL
1110737, at *7 (D.D.C. Mar. 22, 2021). Other courts have found
that such alleged harms might weigh "slightly" in favor of the
plaintiff, but not enough to overcome other TRAC factors that
"weigh strongly in [USCIS's] favor." See, e.g., Palakuru, 521 F.
Supp. 3d at 53 (addressing the plaintiff's allegation that "his
life and the lives of his family members [were] on hold" as a
result of a delayed I-526 adjudication). And other courts have
found that the third and fifth TRAC factors favored plaintiffs
who alleged substantial uncertainty about their employment,
families, and futures as a result of USCIS delays. See, e.g.,
Saharia, 2022 WL 3141958, at *6 (plaintiff alleged that "he and
his wife are currently living in a state of limbo . . . and are
at risk of losing their jobs and being compelled to leave the
United States"); Liu, 2021 WL 2115209, at *5 (plaintiff alleged
that he was "struggling to find employment because of his
immigration status, leaving him unable to plan for his future and
decide whether to pursue opportunities in the U.S."); Keller
Wurtz, 2020 WL 4673949, at *5 (plaintiff alleged family-related
and "professional consequences" that went "beyond merely
commercial concerns").

As these decisions suggest, the analysis of the third and
fifth TRAC factors requires careful consideration and weighing
of the circumstances of a case. Here, the plaintiff has not
alleged any severe or imminent threats to his health, to his
current employment, or to his ability to remain in the United
States or with his family pending adjudication of his I-526
petition. But the alleged adverse effects of the delay on the
plaintiff's mental state and on his decisions regarding his
life, family, and career "are [still] significant," Liu, 2021 WL
2115209, at *5, and "there is little question that, to some
extent, [the] [p]laintiff's welfare is [affected] while he
continues to sit in limbo," Saharia, 2022 WL 3141958, at *7.
Moreover, the plaintiff has stated that he is "prepared to
provide additional details, with documentation, regarding [the]
harm that the delay has caused to his health and welfare," Pl.
Opp'n at 16, which suggests that a complete record may reveal
prejudice beyond what is already alleged in the complaint.[5]

Thus, the plaintiff plausibly alleges that he has endured
at least some prejudice to important interests as a result of

---

[5] At the very least, this representation suggests that the
plaintiff could supplement his already plausible allegations of
harm and prejudice if he were given an opportunity to amend his
complaint, which the plaintiff has requested in the event of
dismissal, see Pl.'s Opp'n at 20, and which the Court would be
inclined to grant. See Fed. R. Civ. P. 15(a)(2) (leave to amend
should be "freely give[n]").

USCIS's delay, and the full extent of that prejudice cannot be determined absent an evidentiary record. At this juncture, the third and fifth TRAC factors weigh slightly in favor of the plaintiff and against dismissal.

### 3.

The sixth TRAC "factor" is in fact an "instruction not to place undue weight on the absence of improper motive: the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." Keller Wurtz, 2020 WL 4673949, at *6; see TRAC, 750 F.2d at 80. The plaintiff argues in his opposition papers that USCIS has shown "systematic indifference" to its obligation to adjudicate I-526 petitions within a reasonable timeframe, see Pl.'s Opp'n at 18, but the nonconclusory allegations in his complaint do not permit a plausible inference of bad faith or impropriety. Nevertheless, "the lack of plausible allegations of impropriety does not weigh against [t]he [p]laintiff" under TRAC. Saharia, 2022 WL 3141958, at *9; see Keller Wurtz, 2020 WL 4673949, at *6 ("There is no allegation of impropriety here, but there need not be."). Thus, the sixth TRAC factor has no effect on the analysis here.

* * *

To summarize, the first TRAC factor, which carries the most weight, counsels in favor of denying the motion to dismiss. The second, third, and fifth TRAC factors likewise favor allowing

the plaintiff's APA claim to proceed, and the fourth and sixth
TRAC factors are neutral at this stage. On the whole, the TRAC
analysis reveals various factual disputes regarding the delayed
adjudication of the plaintiff's I-526 petition that cannot be
resolved on a motion to dismiss. USCIS will have an opportunity
to rebut the plaintiff's allegations with appropriate evidence
at subsequent stages of these proceedings, but any attempt to
resolve those factual disputes now would be premature. USCIS's
motion to dismiss is **denied** insofar as it seeks dismissal of the
plaintiff's claim of unreasonable delay under the APA.

### IV.

The plaintiff also asks this Court to issue a writ of
mandamus, either as a supplement or an alternative to an order
under the APA. Compl. ¶¶ 65(a), 10 (seeking a writ of mandamus
"and/or" an order compelling adjudication pursuant to § 706(1)
of the APA). A writ of mandamus is available to compel agency
action "only if the plaintiff proves that (1) there is a clear
right to the relief sought; (2) the Government has a plainly
defined and peremptory duty to perform the act in question; and
(3) there is no other adequate remedy available." Benzman v.
Whitman, 523 F.3d 119, 133 (2d Cir. 2008).

In this case, mandamus relief would be improper because "an
alternative adequate remedy" is "possible under the APA." Xu v.
Cissna, 434 F. Supp. 3d 43, 56 (S.D.N.Y. 2020) (dismissing claim

"seek[ing] mandamus relief based on [an agency's] supposedly unreasonable delay, in ostensible violation of the APA"). A mandamus claim must be dismissed where, as here, it "duplicates" an APA claim. Id.; see Sharkey v. Quarantillo, 541 F.3d 75, 93 (2d Cir. 2008) (affirming dismissal of mandamus claims "because [the] claims for mandamus duplicate [the plaintiff's] claims under the APA, and because . . . [the] APA claims survive the [agency's] motions to dismiss"); Benzman, 523 F.3d at 132-33 (affirming dismissal of mandamus claims that "duplicate[d] [an] APA count, both as to the underlying allegedly mandatory duties and as to the relief sought"). Thus, USCIS's motion to dismiss is **granted** insofar as it seeks dismissal of the plaintiff's request for mandamus relief.

## V.

Finally, the plaintiff's complaint seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.[6] The Declaratory Judgment Act "gives a district court the discretion to declare the legal rights and other legal relations of any

---

[6] USCIS contends that the plaintiff has "fail[ed] to properly request declaratory relief." USCIS Motion at 29. But the complaint cites directly to "the Declaratory Judgment Act, 28 U.S.C. § 2201," and explicitly states that "[r]elief is requested pursuant to said statute[]." Compl. ¶ 10. Those statements adequately set forth "a demand for the relief sought," as is required to "plead[] . . . a claim for relief" under the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8(a)(3).

interested party seeking such declaration." <u>Chevron Corp. v.</u>
<u>Naranjo</u>, 667 F.3d 232, 245 (2d Cir. 2012). This statute is
"procedural only," and it does not provide a substantive cause
of action. <u>Id.</u> Rather, it permits "a request for a remedy that
does not exist independent of a plausible underlying claim for
relief." <u>Brooklyn Union Gas. Co. v. Exxon Mobil Corp.</u>, 554 F.
Supp. 3d 448, 469 (E.D.N.Y. 2021).

USCIS argues that the plaintiff's claim for declaratory
relief necessarily fails because his substantive claims must be
dismissed pursuant to Rule 12(b)(6). <u>See</u> USCIS Motion at 29. But
the plaintiff's unreasonable-delay claim under the APA survives
USCIS's motion to dismiss. Thus, the plaintiff's request for
declaratory relief in connection with that claim may proceed.[7]

The motion to dismiss is **denied** insofar as it concerns the
plaintiff's request for declaratory relief.

CONCLUSION

The Court has considered all of the parties' arguments. To
the extent not addressed above, the arguments are either moot or
without merit. For the foregoing reasons, the motion to dismiss
is **granted** in part, specifically with regard to the plaintiff's
mandamus claim, and is **denied** in part, specifically with regard

---

[7] USCIS has not alleged any other basis for dismissing the
request for declaratory relief, such as redundancy. It may
allege any such grounds in subsequent pleadings.

to the plaintiff's APA claim and request for declaratory relief.

The mandamus claim is **dismissed** with prejudice.

The Clerk is directed to close ECF No. 28.

**SO ORDERED.**

Dated:      **New York, New York**
            **January 10, 2023**

                                        _____
                                              **John G. Koeltl**
                                    **United States District Judge**